OPINION OF THE COURT
Lara J. Genovesi, J.
Introduction
This court is called upon to determine whether a New York City School District Special Commissioner’s investigation of a relationship between a high school teacher and a student, which included sending a sexually explicit Snapchat photograph, can impute actual knowledge to the municipality.
On December 22, 2014, petitioner T.T., by and through her father S.S., served a notice of petition for an extension of time to serve a notice of claim against respondent New York City Department of Education (DOE). DOE opposed this application.
Background
Petitioner’s claims are for negligent hiring, retention and supervision, and violation of title IX, Education Amendments of 1972 (20 USC § 1681) related to a DOE high school teacher, *609 Sean Shaynak. Shaynak allegedly had a relationship with petitioner, who at that time was 16 years of age, and a student at Brooklyn Technical High School (Brooklyn Tech). During the course of this relationship, Shaynak allegedly encouraged and manipulated petitioner into “delinquent behavior” including, skipping class, alcohol consumption and drug use. This relationship culminated on June 26, 2014 when Shaynak allegedly sent a sexually explicit photograph to petitioner through a social messaging service called Snapchat.
Petitioner informed her father, S.S., about this explicit photograph three days later, on June 29, 2014. S.S. alerted the police of this photograph one month later, on July 29, 2014. Shaynak was, thereafter, arrested on August 26, 2014. That same day, the arrest was publicized in the New York Times online edition, and appeared in print the following day, on August 27, 2014, in the New York Region section (at A19). The New York Times article stated that a high school teacher from Brooklyn Tech was arraigned “on charges that he sent a sexually explicit photograph to a student over the popular messaging application] Snapchat.” It also included a statement made by DOE spokesperson Devora Kaye. Ms. Kaye was quoted in the New York Times article stating that Shaynak “was reassigned immediately and will not be in contact with students.” Ms. Kaye further provided that “[t]his alleged behavior is unacceptable and has no place in our schools.”
On September 30, 2014, the Kings County District Attorney’s office issued a press release pertaining to Shaynak’s arrest. The press release stated that the Brooklyn Special Victims Division and the FBI are investigating Shaynak. The press release further provided, in relevant part, that
“a Brooklyn Technical High School math and science teacher who was indicted last month for allegedly sending an explicit photograph to a 16-year-old student has been charged in a new 36-count indictment with crimes including kidnapping and criminal sexual act [sic] after investigators found evidence on his computer that he allegedly victimized six other teenage girls. . . .
“The District Attorney said that, according to the investigation, three computers and two phones were seized from the defendant following his August 26, 2014, arrest. A search warrant was executed and thousands of text messages, as well as *610 hundreds of photographs and videos, were recovered. The investigation revealed that the defendant had allegedly victimized six teenage girls, ranging in age from 13-19, between 2011 and 2014.
“The District Attorney said that, according to the investigation, the defendant took a 15-year-old student to a nude beach in New Jersey without her parents’ consent; he performed a sex act on an 18-year-old student without her consent; he sent photos of his genitalia to four students, including two minors; he engaged in consensual sex acts with two students (ages 18 and 19); he inappropriately touched and kissed students and grabbed the buttocks of a minor; he gave alcohol and cigarettes to minors; he requested two minor girls engage in sex with each other.” (See petition, exhibit C, District Attorney, Kings County, Press Release, Sept. 30, 2014.)
On October 3, 2014, the office of the Special Commissioner of Investigation for the New York City School District (NYC School District Investigator) began an investigation into the hiring of Shaynak. During the course of this investigation, the NYC School District Investigator met with various DOE employees, including the DOE’s Director of Employee Relations. On November 20, 2014, Regina A. Loughran, the First Deputy Commissioner of Investigation, sent the findings of the investigation to the DOE. In a letter to Hon. Carmen Fariña, DOE Chancellor, the First Deputy Commissioner of Investigation stated,
“On October 3, 2014, SCI self-initiated an investigation into the hiring of Shaynak by the Department of Education (‘DOE’). Although Shaynak’s initial arrest was in August 2014, details about a re-arrest on upgraded criminal charges recently had been made public. Various media outlets questioned how Shaynak passed a background check and cited a matter from Maryland involving Shaynak and a neighbor described as an 11 year old boy.” (See petition, exhibit D, City of New York, The Special Commissioner of Investigation for New York City School District, Nov. 20, 2014 at 1.)
The NYC School District Investigator obtained Shaynak’s original background investigation file. The report further stated that at the time of hiring, “Shaynak explained that he was ar *611 rested on October 3, 2005, following a physical altercation with a ‘young teen male.’ Shaynak appeared in court before a judge and agreed to dispose of the case through Probation Before Judgment (‘PBJ’).” The hiring investigator did not know the age of the “young teen male” with whom Shaynak had the altercation with, but assumed he was between the ages of 13 to 18 years, rather than 11 years of age.
The hiring process also included a review of previous employment. It was revealed, at that time, that during Shaynak’s tenure at Manhattan Village Academy, Shaynak was accused of verbal abuse for berating a student in public, which included the use of language that “tends to belittle or subject a student to ridicule.” The NYC School District Investigator also interviewed the principal, assistant principal, and the assistant principal in charge of physics and engineering at Brooklyn Tech, each of whom worked at Brooklyn Tech at the time Shaynak was hired, and each explained their role in the hiring process. The investigative report explained in a footnote that a local newspaper contacted the NYC School District Investigator’s office, alleging to have a confidential source from Brooklyn Tech. The NYC School District Investigator spoke with the source who alleged to have information that Shaynak had a relationship with the person that hired him. However, the source admitted that this was based on a rumor and not firsthand knowledge.
The investigative report further revealed that during the pre-screening process for teacher recruitment to the Teaching Fellows program, a DOE program which hires professionals who wish to become educators in their respective fields, an entry was made into the Teacher Fellow system documenting a personality conflict between Shaynak and an assistant principal. This conflict resulted in Shaynak’s transfer to another site.
The NYC School District Investigator also spoke with a person, referred to as a
“ ‘Concerned Staff Member,’ who claimed that a Brooklyn teacher had information about Shaynak’s inappropriate interactions with students during costume parties held by the school. [Footnote: ‘A media report indicated that, one year, Shaynak was dressed as a French maid and, another year, as Brittany Spears in a schoolgirl outfit.’] SCI met with the named teacher who acknowledged that he had chaperoned several of the Brooklyn Tech an *612 nual Halloween masquerade balls which were held on The Queen of Hearts, a boat docked off Hudson Street, and attended by staff members and students. The teacher asserted that he did not see the inappropriate behavior alleged in the complaint.” (See petition, exhibit D, City of New York, The Special Commissioner of Investigation for New York City School District, Nov. 20, 2014 at 7.)
The First Deputy Commissioner of Investigation requested that the DOE Chancellor notify the NYC School District Investigator of any action contemplated or taken regarding this investigation within 30 days of receipt of the investigative report. The report further indicated that it will be forwarded to the DOE Office of General Counsel.
Discussion
To maintain a tort action against a school district a claimant must serve a notice of claim within 90 days of the alleged injury (see Education Law § 3813 [2]; General Municipal Law § 50-e [5]; see also Matter of Fox v New York City Dept. of Educ., 124 AD3d 887 [2d Dept 2015]). “[C]ourts are authorized to extend the time in which to serve a notice of claim, provided that the extension does not exceed the time limit for the commencement of an action by the claimant against the public corporation” (Bazile v City of New York, 94 AD3d 929, 929 [2d Dept 2012]; see Education Law § 3813 [2-a]). A plaintiff must petition for leave within one year and 90 days after the accrual of the claim (see General Municipal Law § 50-e [5]; see also Robinson v Board of Educ. of City Sch. Dist. of City of N.Y., 104 AD3d 666 [2d Dept 2013]).
“A claimant’s infancy will automatically toll the applicable one-year and 90-day statute of limitations for commencing an action against a municipality” (Arias v New York City Health & Hosps. Corp. [Kings County Hosp. Ctr.], 50 AD3d 830, 832 [2d Dept 2008]). The plaintiff must establish a nexus between the infancy and the delay in filing the notice of claim (see Williams v Jamaica Hosp. Med. Ctr., 124 AD3d 636 [2d Dept 2015]).
Here, it is not disputed that petitioner’s application for an extension of time to serve a notice of claim, dated December 22, 2014, was brought within one year and 90 days. Petitioner’s claim for negligence accrued on June 26, 2014, when she received the sexually explicit Snapchat photograph from Shaynak. Petitioner’s time to serve a notice of claim expired 90 days *613 later, on September 24, 2014. This petition for an extension of time to serve a notice of claim was brought on December 22, 2014, almost three months after petitioner’s time to serve a notice of claim expired.
The Appellate Division, Second Department recently held that
“[i]n determining whether to grant leave to serve a late notice of claim, the court must consider whether (1) the school district or its attorney or insurance carrier acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a reasonable time thereafter, (2) the injured party was an infant at the time the claim arose and, if so, whether there was a nexus between the infancy and the failure to serve a timely notice of claim, (3) the petitioner demonstrated a reasonable excuse for the failure to serve a timely notice of claim, and (4) the school district was substantially prejudiced by the delay in its ability to maintain its defense on the merits” (Matter of Fox v New York City Dept. of Educ., 124 AD3d 887, 888-889 [2015], supra, citing Williams v Nassau County Med. Ctr., 6 NY3d 531 [2006]).
Neither the presence nor the absence of any one factor is determinative. However, whether the municipality acquired actual knowledge of the essential facts constituting the claim within 90 days of its accrual or within a reasonable time thereafter is of great importance (see Bakioglu v Tornabene, 117 AD3d 658 [2d Dept 2014]).
Actual Knowledge
The Appellate Division, Second Department has consistently held that
“[i]n order to have actual knowledge of the essential facts constituting the claim, the public corporation must have knowledge of the facts that underlie the legal theory or theories on which liability is predicated in the notice of claim; the public corporation need not have specific notice of the theory or theories themselves” (Reliman v Hauppauge Union Free Sch. Dist., 120 AD3d 634, 635 [2d Dept 2014]; see also Matter of Hampson v Connetquot Cent. Sch. Dist., 114 AD3d 790 [2d Dept 2014]; Claud v West Babylon Union Free Sch. Dist., 110 AD3d 663 [2d Dept 2013], citing Matter of Felice v Eastport/South *614 Manor Cent. School Dist., 50 AD3d 138 [2d Dept 2008]).
“[F]or a report to provide actual knowledge of the essential facts, one must be able to readily infer from that report that a potentially actionable wrong had been committed by the public corporation” (Kuterman v City of New York, 121 AD3d 646, 647 [2d Dept 2014]). In this case, there are three instances wherein it can be potentially demonstrated that the City had actual knowledge of the essential facts constituting the claim.
This court will consider the following as they relate to the DOE’s actual knowledge: (1) NYC School District Investigator’s report, dated November 20, 2014, sent to the DOE Chancellor, and forwarded to the DOE Office of General Counsel, approximately two months after petitioner’s time to serve the notice of claim expired; (2) the New York Times article, online edition and print edition, released on August 26 and 27, 2014, respectively, within petitioner’s 90-day period to serve the notice of claim; and (3) the District Attorney’s indictment and press release dated September 30, 2014, six days after petitioner’s time to serve a notice of claim expired.
This court first considers the NYC School District’s investigation, which was conducted after the School District became aware that Shaynak was accused of committing various crimes against students, was arrested multiple times, and that “various media outlets” were beginning to question the DOE’s hiring practices. This investigation specifically examined the circumstances surrounding Shaynak’s hiring by the DOE, beginning from his background investigation, pre-screening and acceptance into the Teaching Fellows program, as well as his hiring by Brooklyn Tech. It also detailed prior incidents which occurred during Shaynak’s retention by the DOE at Manhattan Village Academy, Shaynak’s previous place of employment, in addition to those at Brooklyn Tech. The investigation began on October 3, 2014, only nine days after petitioner’s 90 days to serve the notice of claim expired on September 24, 2014. Further, the investigative report was sent directly to the New York City Public School’s Chancellor and the DOE Office of General Counsel on November 20, 2014.
The underlying cause of action is one of negligence in hiring, supervision and retention. This report from the NYC School District Investigator, which detailed Shaynak’s background investigation, pre-screening, hiring, and retention, directly informed counsel for the DOE of the essential facts which *615 underlie the legal theories on which liability is predicated in the proposed notice of claim. One can readily infer from this investigative report that a potentially actionable wrong was committed by the DOE.
Secondly, this court considers the New York Times article, which first ran online on the very day of Shaynak’s arrest, and then in print on the following day. This article specifically includes statements from a DOE spokesperson, which indicated that Shaynak was reassigned immediately, will not be in contact with students, and that the alleged behavior is unacceptable and has no place in our schools. A representative from the DOE, the “public corporation” herein, made a statement to the press repudiating the alleged behavior of Shaynak, which is indicia of the DOE’s knowledge of the essential facts of the incident. In addition, the DOE immediately took measures to prevent another incident by reassigning Shaynak and preventing any further contact with students, which further suggests that the DOE had knowledge of the essential facts of the potentially actionable incident at the time the New York Times article was released. The New York Times article, first published on August 26, 2014, was well within petitioner’s 90-day period to serve the notice of claim.
Thirdly, this court considers the Kings County District Attorney press release, issued on September 30, 2014, six days after petitioner’s time to serve the notice of claim expired. This press release detailed Shaynak’s 36-count indictment and describes the facts underlying the criminal investigation. The release stated outright that Shaynak, a Brooklyn Tech teacher, allegedly sexually victimized six teenage girls, ranging in age from 13 to 19 years of age, and specifically included the allegation that Shaynak sent an explicit photograph to a 16-year-old student.
This court recognizes that the District Attorney’s investigation does not necessarily impute knowledge to the municipality or other municipal agencies, such as the DOE (see Caselli v City of New York, 105 AD2d 251, 255 [2d Dept 1984] [“A municipality often will have numerous employees assigned to separate and diverse agencies . . . and the purpose of the statutory notice of claim requirement would simply not be fulfilled if all information obtained by municipal employees, officers or agencies in the regular course of their business was to be imputed to the municipality”]). However, this was a highly publicized incident and the statement was released to the press.
*616 This court finds that the DOE had actual knowledge of the essential facts constituting the claim within a reasonable time. The investigative unit for the New York City School District conducted an investigation into the hiring of Shaynak, based on their knowledge of the arrests. This investigation began within a reasonable time after petitioner’s time to serve a notice of claim expired, and the investigative report was provided directly to the DOE’s Office of General Counsel two months thereafter. Furthermore, the DOE publicly acknowledged and repudiated Shaynak’s alleged acts. Accordingly, this court finds that there is a sufficient basis herein, to demonstrate that the DOE received knowledge of the facts that underlie the legal theories on which liability is predicated.
Substantial Prejudice
This court has considered whether the City would be prejudiced by an approximate three-month delay in service of the late notice of claim. The purpose of the notice of claim requirement is to protect public corporations against stale claims and to give them an opportunity to timely and efficiently investigate tort claims (see generally Matter of Felice v Eastport/South Manor Cent. School Dist., 50 AD3d 138 [2008], supra; see also Matter of Peterson v New York City Dept. of Envtl. Protection, 66 AD3d 1027 [2d Dept 2009]). It is the presumption that delay prejudices the municipality unless proved otherwise; plaintiff has the burden of proof (see Nurena v Westchester County, 120 AD3d 781 [2d Dept 2014]; see generally Matter of Abramovitz v City of New York, 99 AD3d 1000 [2d Dept 2012]). The Court of Appeals held that “proof that the defendant had actual knowledge is an important factor in determining whether the defendant is substantially prejudiced by such a delay” (Williams v Nassau County Med. Ctr., 6 NY3d 531, 539 [2006], supra).
Here, as stated above, an investigation specifically regarding the circumstances of Shaynak’s hiring by the DOE was already conducted by the NYC School District Investigator. This investigation commenced nine days after petitioner’s time to serve a notice of claim expired. The investigative report states that “although Shaynak’s initial arrest was in August 2014, details about a re-arrest on upgraded criminal charges recently had been made public,” which indicates that the investigation was timely conducted shortly after Shaynak’s second arrest, while the details were fresh. Further, the results of this investigation were sent to the DOE’s Chancellor and the Office *617 of General Counsel on November 20, 2014. Inasmuch as the DOE had actual knowledge of the essential facts underlying the claim, the matter was promptly investigated by the School District while the details of Shaynak’s re-arrest were fresh, and the findings based on this investigation were sent directly to the DOE Office of General Counsel less than two months after petitioner’s 90-day period expired, petitioner met her burden and rebutted the presumption that the delay would prejudice the DOE.
Infancy and Reasonable Excuse
££[T]he factor of infancy alone does not compel the granting of a motion for leave to serve a late notice of claim” (Arias v New York City Health & Hosps. Corp. [Kings County Hosp. Ctr.], 50 AD3d 830, 832 [2008], supra). “The history of section 50-e (5) and the case law demonstrate that a nexus between infancy and delay, while not a requirement, remains a statutory factor that a court should take into account” (Williams v Nassau County Med. Ctr., 6 NY3d 531, 538 [2006], supra).
Petitioner contends that claimant’s excuse for delay in filing a notice of claim is due to her infancy. Petitioner further contends that the nature of the allegations caused reasonable fear and apprehension of further humiliation and “psychological damages” which delayed the decision to go forward with a civil lawsuit. Petitioner’s allegation of fear and humiliation, although understandable, is not necessarily related to her infancy. There is no demonstrated nexus between the infancy and the delay. Petitioner informed her father of the explicit photograph three days after it was received. Petitioner’s father alerted the police approximately one month later. The instant application was not brought for another five months. Since it is clear that the petitioner did not lack the capacity to make the alleged incident known to her parent, the nearly three-month delay in serving a notice of claim cannot be attributed to infancy (see Matter of Doe v Goshen Cent. School Dist., 13 AD3d 526 [2d Dept 2004]).
While the lack of a causative nexus may make the delay less excusable, it does not make it fatally deficient (see Williams v Nassau County Med. Ctr., 6 NY3d 531 [2006], supra). Further, “the absence of an excuse is not fatal where the DOE had actual knowledge of the essential facts constituting the claim, and there was an absence of prejudice” (Matter of Fox v New York City Dept. of Educ., 124 AD3d 887, 889 [2015], supra). In this case, although infancy is not found to be a basis to excuse the *618 delay in seeking leave to file a late notice of claim, the absence of an excuse is not fatal. The DOE had actual knowledge and the DOE is not prejudiced by the delay.
Conclusion
The petitioner demonstrated to this court that the City had actual knowledge of the essential facts underlying the asserted legal claims. Further, the City would suffer no prejudice if the petitioner was permitted to serve a late notice of claim, given that an investigation into Shaynak’s hiring was conducted within a reasonable time after the time to file the notice of claim expired. Accordingly the petition is granted.